UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LARRY E. ARNOLD,

       Plaintiff,

v.                                   CASE NO. 3:14-cv-1064-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his applications for a period of disability, disability insurance

benefits, and supplemental security income.  Plaintiff alleges he became disabled

on July 1, 2011.  (Tr. 20, 44.)  Plaintiff's applications were denied initially and on

reconsideration.  A hearing was held before the assigned Administrative Law

Judge ("ALJ") on November 15, 2012, at which Plaintiff was represented by an

attorney.  (Tr. 43.)  The ALJ found Plaintiff not disabled from July 1, 2011, the

alleged onset date, through January 11, 2013, the date of the decision.  (Tr. 28.)

Plaintiff is appealing the Commissioner's decision that he was not disabled

during the relevant time period.  Plaintiff has exhausted his available

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 20.)

administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues the following three general points on appeal: (a) the ALJ improperly determined Plaintiff's Residual Functional Capacity ("RFC") with respect to Plaintiff's ability to use his near visual acuity no more than frequently and his far visual acuity only occasionally; (b) the ALJ improperly relied on vocational rehabilitation expert ("VE") testimony in response to a hypothetical question that did not adequately reflect Plaintiff's limitations; and, (c) the ALJ's credibility determination is not supported by substantial evidence.

Defendant responds that the ALJ properly evaluated Plaintiff's RFC, that the ALJ properly relied on the VE testimony in response to a hypothetical question that accurately encompassed Plaintiff's limitations, and that substantial evidence supports the ALJ's credibility finding. (Doc. 30.)

### A.   The ALJ's Decision

The ALJ determined that Plaintiff had severe impairments, including glaucoma, hypertension, Gastro Esophageal Reflux disease, Hepatitis C virus, and history of lower back pain and hemorrhoids.  (Tr. 22.)  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

3

impairments.  (Tr. 23.)

The ALJ determined, in relevant part, that Plaintiff had the RFC to "perform

medium work . . . [except that Plaintiff has] no peripheral vision, and has near and

far acuity limitations.  He may use his near vision no more than frequently and far

vision occasionally."  (Tr. 23.)  In making this determination, the ALJ reasoned in

part that "[Plaintiff's] medically determinable impairments could reasonably be

expected to cause the alleged symptoms, however, [Plaintiff's] statements

concerning the intensity, persistence and limiting effects of these symptoms are

not entirely credible . . ." (Tr. 25.)

With the benefit of testimony from VE Lauren Lovely, the ALJ determined

that Plaintiff could perform his past relevant work ("PRW") (Tr. 28.)  As such, the

ALJ found that Plaintiff was not disabled.  (Tr. 28.)

## B.    The ALJ Did Not Err With Respect to Plaintiff's RFC Finding

Plaintiff contends that the ALJ erred in evaluating his visual limitations.  He

argues that the ALJ's finding limiting him to using his near vision frequently and

using his far vision occasionally was improper because "vision is an activity that

occurs all throughout the day," and therefore it "cannot be characterized as other

postural activities such as sitting, lifting and carrying."  (Doc. 27 at 8.)  In essence,

Plaintiff argues that the ALJ committed reversible error by using the terms

"frequent" and "occasional" to describe Plaintiff's near and far vision limitations.

4

The undersigned disagrees.

As support for his contention, Plaintiff merely quotes a portion of the Court's order in *Gainey v. Comm'r of Soc.*, 6:12-cv-1579-Orl-DAB, 2014 WL 505117 at *4 (M.D. Fla. Feb. 7, 2014), which states that "the use of the term 'frequent' in 'near and far acuity, depth perception and field of vision' is misplaced – a person's vision is either 'limited' or 'unlimited' in those categories." (Doc. 27 at 8.)  However, Plaintiff's reliance on *Gainey* to support his position in this instance is misplaced.

In *Gainey*, the Court explained that the ALJ failed to appreciate the severity of Plaintiff's visual limitations.  The Court reasoned that because it was undisputed that the claimant was totally blind in one eye, the claimant's vision would be limited all of the time and not just "frequently" limited.  *Id.* at *4-5. Ultimately, the Court in *Gainey* held that substantial medical evidence of record did not support the ALJ's determination that the claimant's near *and* far acuity were limited to frequent use.  The Court in *Gainey* did not hold that an ALJ can never render limitations that distinguish between the use of near and far visual ability to determine a claimant's RFC.

Here, it has not been conceded that Plaintiff suffers total blindness in one eye.  Moreover, unlike in *Gainey* where the ALJ found Plaintiff's near and far acuity limited to frequent use, the ALJ here distinguished between Plaintiff's

limitations in the use of near and far visual ability.  The court in *Humphreys v. Comm'r of Soc. Sec.*, decided after *Gainey*, rejected a similar argument to that made by Plaintiff here – that a determination must be made by the ALJ that "[the claimant's] visual acuity would be limited all of the time, not just 'occasionally' limited." Case No. 6:13-cv-1701-Orl-DAB, 2014 WL 5793855 at *8 (M.D. Fla. Nov. 6, 2014).  The Court, while acknowledging the *Gainey* language quoted by Plaintiff's brief in this matter, emphasized the propriety of discussing a claimant's vision loss in terms of near visual ability or gross visual ability.  *Humphreys*, 2014 WL 5793855 at *8 (M.D. Fla. Nov. 6, 2014) ("[I]t is appropriate for a VE to discuss vision loss in terms of whether positions require near visual ability or gross visual ability . . .") (citing *Lacy v. Astrue*, Case No. 4:12-cv-16(CEJ), 2012 WL 6738495 at *7 (E.D. Mo. Dec. 31, 2012) (holding the ALJ properly considered plaintiff's loss of vision in determining whether other work existed in the economy, where the VE testified that alternative occupations of bagger and packer required only "gross visual ability" according to the Dictionary of Occupational Titles)).

The Dictionary of Occupational Titles ("DOT") further indicates that visual acuity is properly assessed by distinguishing between near and far acuity, and by using the terms "frequently" or "occasionally."  For example, the DOT codes for the PRW that the ALJ found Plaintiff capable of performing utilize the terms "frequently," "occasionally," or "not present" to describe near and far vision

limitations.  *See, e.g.,* Groundskeeper, Industrial-Commercial, DOT code

406.684-014, 1991 WL 673340 ("Near Acuity: Occasionally – Exists up to 1/3 of

the time," and "Far Acuity: Occasionally – Exists up to 1/3 of the time"); Laborer,

Stores, DOT code 922.687-058, 1991 WL 688132 ("Near Acuity: Frequently–

Exists from 1/3 to 2/3 of the time," and "Far Acuity: Not Present – Activity or

condition does not exist"); Cleaner II, DOT code 919.687-014, 1991 WL 687897

("Near Acuity: Not Present – Activity or condition does not exist," and "Far Acuity:

Not Present – Activity or condition does not exist").

Moreover, doctors assessing a claimant's functional capacity have used

the terms "frequently" or "occasionally" to describe a claimant's near and/or far

visual acuity limitations.  *See, e.g., Underwood v. Colvin*, Case No. 5:13-cv-192-

CLS, 2014 WL 905051 at *2 (N. D. Ala. Mar. 7, 2014) (noting that treating

physician opined plaintiff could "frequently" use his far acuity, but could only

"occasionally" use his near acuity); *Jones v. Astrue*, Case No. CV-12-S-195-J,

2012 WL 4953188 at *3 (N.D. Ala. Oct. 11, 2012) (noting that treating physician

opined plaintiff's near and far acuity could be performed "frequently"); *Felton v.

Colvin*, Case No. CV13-8449-JPR, 2015 WL 262953 at *8 (C.D. Cal. Jan. 21,

2015) (noting that treating physician opined plaintiff could "frequently" perform

work activities involving "near acuity" and "far acuity"); *Charron v. Astrue*, Case

No. 13-cv-36-PB, 2013 WL 6068341 at *2 (D. N.H. Nov. 18, 2013) (noting that

examining physician opined plaintiff could perform work requiring near and far acuity on a "frequent" basis); *Arnold v. Astrue*, Case No. 11-3541-CV-DPR, 2013 WL 1289939 at *2 (W.D. Mo. Mar. 26, 2013) (noting that examining physician opined plaintiff could never see with near acuity, "frequently" see with far acuity, and "occasionally" see with depth perception).

Finally, this Court (as well as others) have upheld the ALJ's reliance on VE testimony with respect to jobs a plaintiff could perform that include a "frequent" near acuity limitation.[2]   *See, e.g., Ward v. Astrue*, Case No. 3:10-cv-1031-J-MCR, 2012 WL 695702 at *8 (M.D. Fla. Mar. 5, 2012) ("The VE testified that he had witnessed each of the three jobs at least once and was aware of the skills necessary for their performance.  Thus, it is presumed the VE was aware of the frequent near acuity requirement and considered the requirement when making his suggestion.") (internal citations omitted); *Swayzer-Bradleigh v. Colvin*, Case No. 3:14-cv-673-DW, 2015 WL 2213398 at *7 (W.D. Ky. May 11, 2015) (affirming decision of Commissioner where ALJ relied on VE testimony that plaintiff would remain capable of returning to her PRW assuming that she was capable of no more than "frequent" fine visual acuity); *Etheridge v. Colvin*, Case No. CIV-13-904-M, 2015 WL 1508245 at *3 (W.D. Okla. Mar. 31, 2015) (affirming ALJ's decision where VE testified that plaintiff could perform certain jobs requiring no

---

[2] Plaintiff does not dispute that the VE's testimony is consistent with the DOT.

more than "frequent" near visual acuity); *see also Cargile v. Comm'r of Soc. Sec.*, Case No. 1:14-cv-337, 2015 WL 2084701 at *3-4 (S.D. Ohio May 4, 2015) (holding that the ALJ did not err in relying on the VE's testimony that plaintiff could perform her PRW where ALJ found plaintiff limited to "frequent" far acuity and "occasional" depth perception where job required "occasional" near acuity, far acuity, field of vision, and depth perception), *adopted*, 2015 WL 3745034 at *1 (S.D. Ohio June 15, 2015).  In light of the foregoing, the undersigned finds that the ALJ did not err in using the terms "frequent" to describe Plaintiff's near acuity and "occasional" to describe Plaintiff's far acuity.

Other than making passing remarks in his brief, Plaintiff does not meaningfully contend that the ALJ's RFC determination is not supported by substantial evidence.  (*See, e.g.,* Doc. 27 at 8 ("It is totally unknown how the ALJ concluded that Mr. Arnold would merely be limited to 'frequent' near acuity and 'occasional" far acuity'), Doc. 27 at 10 ("[T]here is no evidence supporting the characterization that Mr. Arnold would be limited to 'frequent' near acuity and 'occasional' far acuity[,]" and "it is not clear from the record how the ALJ concluded that the claimant would merely be limited to 'frequent' or 'occasional' visual limitations.").)  The reason for this may be that Plaintiff acknowledges that his own attorney suggested the "frequent" near acuity and "occasional" far acuity limitations to the VE, which were then adopted by the ALJ.  (Tr. 86 ("So let's do

frequent for near [acuity], and then occasional for far [acuity] . . .").)

Nevertheless, Plaintiff failed to reference in his argument section any

medical evidence of record indicating greater limitations than those found by the

ALJ.  *See, e.g., Cargile*, 2015 WL 2084701 at *4 ("[P]laintiff points to no objective

evidence that shows her glaucoma imposes greater limitations, including in the

areas of far acuity and depth perception, than those assessed by the ALJ.  It is

plaintiff's burden to provide evidence showing how her impairment has affected

her functioning during the period of alleged disability.") (citations omitted).

Moreover, the ALJ's determination is supported by the record.  As noted by the

ALJ, the more recent treatment notes revealed routine follow up appointments

with medication refills, "no vision difficulty," and "no complaints."  (Tr. 421, 428,

435.)

## C.    The ALJ Did Not Err in Relying on VE Testimony

Plaintiff argues that because the ALJ erred in failing to properly

characterize his visual limitations, the ALJ improperly relied on VE testimony that

Plaintiff could perform his PRW.  Plaintiff bears the initial burden of showing that

he cannot perform his PRW.  *See, e.g., Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001) (stating that the claimant "must prove at step four that his

impairment prevents him from performing his [PRW].").  As such, the ALJ was not

required to obtain VE testimony to determine whether Plaintiff could perform his

PRW.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)

("[B]ecause the ALJ concluded that she is capable of performing her [PRW],

testimony from a [VE] was not necessary."); *Schnoor v. Bowen*, 816 F.2d 578,

582 (11th Cir. 1987) ("The testimony of a [VE] is only required to determine

whether the claimant's [RFC] permits him to do other work after the claimant has

met his initial burden of showing that he cannot do past work.").

   Here, the ALJ determined Plaintiff's RFC and then referenced the DOT with

respect to PRW that does not require the performance of work related activities

precluded by Plaintiff's RFC.  (Tr. 27-28.)  Plaintiff failed to address in his brief

how he met his burden of proving he could not perform his PRW so as to shift the

burden to the Commissioner, and does not appear to dispute the validity of the

ALJ's references to the DOT.  Rather, Plaintiff argues that the hypothetical

question posed to the VE was improper as it included the limitations of "frequent"

near acuity and "occasional" far acuity.  Plaintiff's contention in this regard is

unpersuasive for the same reasons explained in Section II(B) of this opinion. The

VE testified at the hearing in response to a complete hypothetical.  Plaintiff's

attorney posed the hypothetical to the VE that included the limitations contained

within the RFC finding (including "frequent" near acuity and "occasional" far acuity

limitations), and the VE responded that Plaintiff could perform PRW based upon

those limitations.  (Tr. 84-87.)  The VE's testimony is consistent with the DOT as

referenced by the ALJ in finding that Plaintiff can perform PRW.  In light of the foregoing, the undersigned cannot conclude that the ALJ erred by determining Plaintiff could perform his PRW.

### D.    The ALJ Did Not Err in Discrediting Plaintiff's Credibility

Plaintiff argues that the ALJ failed to follow the Eleventh Circuit's credibility standard with regard to evaluating and discrediting Plaintiff's pain testimony.  The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit  such testimony, he must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. §§ 404.1529, 416.929(a) "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical

12

signs and laboratory findings in deciding the issue of disability."  *Foote*, 67 F.3d at

1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically

determinable impairment exists, the ALJ must analyze "the intensity, persistence,

and limiting effects of the individual's symptoms to determine the extent to which

the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or

functionally limiting effects of pain or other symptoms are not substantiated by

objective medical evidence," the ALJ "must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record."  SSR

96-7p.

> When evaluating the credibility of an individual's statements,
> the adjudicator must consider the entire case record and give
> specific reasons for the weight given to the individual's
> statements. . . .  The reasons for the credibility finding must be
> grounded in the evidence and articulated in the determination
> or decision.  It is not sufficient to make a conclusory statement
> that "the individual's allegations have been considered" or that
> "the allegations are (or are not) credible."  It is also not enough
> for the adjudicator simply to recite the factors that are
> described in the regulations for evaluating symptoms.[3]  The
> determination or decision must contain specific reasons for the

---

[3] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

Plaintiff asserts that the ALJ failed to articulate explicit reasons for discrediting his testimony and provided only "boilerplate" reasons in his written decision.  Plaintiff specifically references as "boilerplate language" the ALJ's finding that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms, however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent that [Plaintiff] remains able to continue to engage in activities of daily living and function independently."  (Tr. 25.)  Plaintiff contends that the use of such "boilerplate language" by the ALJ is insufficient to constitute "accurate and specific findings as to [the] credibility of the Plaintiff."  (Doc. 27 at 12.)  The undersigned disagrees.

The ALJ did not apply the wrong credibility standard merely by utilizing the

14

language quoted above in his decision.  *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (noting that an ALJ is not required to use particular phrases or formulations in making a credibility determination); *Karboski v. Colvin*, Case No. 8:12-cv-2033-T-33EAJ, 2013 WL 3766598 at *9, n.16 (M.D. Fla. July 16, 2013) (explaining that the ALJ did not use the wrong legal standard in evaluating a plaintiff's credibility by utilizing certain language in the opinion suggesting that the ALJ compared the plaintiff's complaints to the RFC, rather than to the medical evidence).  While the ALJ's credibility analysis could have been more clearly organized, it is clear here that the ALJ provided explicit reasons for discounting Plaintiff's credibility that were more than just "boilerplate" in nature.  The reasons provided by the ALJ are supported by substantial evidence.

The ALJ first considered Plaintiff's medical treatment and history in assessing the credibility of his statements.  The ALJ determined that evidence of Plaintiff's medical history and treatment failed to establish impairments of a severity to preclude Plaintiff from working.  (Tr. 24.)  Specifically, the ALJ noted Plaintiff's conservative treatment regiment that included "routine follow-up appointments and medication refills to treat his various medical conditions," including Plaintiff's alleged visual impairments.  (Tr. 24, 357, 366-67, 369, 376-77, 388, 392-94, 421, 426, 428, 432, 435, 436, 438, 440.)  Moreover, the ALJ

discussed the medical evidence and opinions of record.  (Tr. 26-27.)  He noted that no treating physician suggested any specific restrictions or limitations.  (Tr. 26.)

The ALJ also considered Plaintiff's activities of daily living and noted that Plaintiff is able to function independently by keeping up with hygiene, shopping for groceries, preparing meals, and performing household chores.  (Tr. 25, 75-78, 140, 302.)  Finally, the ALJ discussed Plaintiff's pain allegations and hearing testimony, and noted several inconsistencies, including Plaintiff's failure to wear glasses to the hearing, Plaintiff's use of a non-medically prescribed cane, the lack of medical evidence to support Plaintiff's allegations of back pain, and the medical evidence supporting manageable abdominal symptoms.  (Tr. 25, 66, 68, 142, 298, 357-67, 369-71, 376-78, 388-96, 405-08, 410-13, 421-41.)  The ALJ articulated explicit reasons for discounting Plaintiff's credibility that are supported by substantial evidence.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based

on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 25, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record